THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK _____X

Samuel Walton,

                                        Plaintiff,

                                                          **JURY TRIAL DEMANDED**

        -against-

                                                          **DOCKET #15-CIV-3080**

Officer Lee, Individually and as a New York City
Correctional Officer; Officer Reid, Individually
and as a New York City Correctional Officer;
Officer Zender, Individually and as a New York
City Correctional Officer; Officer Als, Individ-
ually and as a New York City Correctional Officer;
Officer David, Individually and as a New York
City Correctional Officer; Officer Scoma; Individ-
ually and as a New York City Correctional Officer;
Officer Maldanado; Individually and as a New
York City Correctional Officer; Officer Fontanez,
Individually and as a New York City Correctional
Officer; Officer Vega, Individually and as a New
York City Correctional Officer; Officer Azad,
Individually and as a New York City Correctional
Officer; Captain Feilds, Individually and as a
New York City Correctional Officer; Captain Boyd,
Individually and as a New York City Correctional
Officer; Captain Smith, Individually and as a
New York City Correctional Officer; Laali Ali,
Ranjan Pravin, Sheila Cross-Horlback, Carlos
Melitiche, Leelamma Thomas, Raja Mallavarapu,
Ava Belton, Allan S. Goldberg, Arkady Cherchever,
Nnaemezie Umeasor, Individually and as New York
City Medical Doctors; Akinpelu Ibitoye, Individ-
ually and as a New York City Licensed Practitioner
Nurse; Francois Jeanty, Individually and as a New
York City Physician Assistant; Ms. Moultry,
Individually and as a DOCCS Grievance Coordinator
and, Bellevue/ John Doe Bellevue Hospital Admin-
istrator,

                                        Defendants.X
_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED #: 7-14-16

### JURISDICTION AND VENUE

1) This is a Civil Action authorized by 42 U.S.C. §1983, being

brought by the Plaintiff, who seeks redress for the deprivation

of his Constitutional Rights under color of State Law, and for

various torts committed by the Defendants herein.

2) This Court has Jurisdiction under 28 U.S.C. §1331, and the

Southern District of New York is the appropriate venue under 28

U.S.C. §1367, and 28 U.S.C. §1391 (b)(1).

                        -1-

## CHARACTER OF THE PARTIES

3) Samuel Walton, at all time hereinafter mentioned in the Plaintiff, and is a citizen of the United States, and is a resident of New York State.

4) Officer Lee, (hereinafter referred to as Lee), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, **(42 U.S.C. §1983),** and did commit various torts against the Plaintiff.

5) Officer Reid, (hereinafter referred to as Reid), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, **(42 U.S.C. §1983),** and did commit various torts against the Plaintiff.

6) Officer Zender, (hereinafter referred to as Zender), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color law, **(42 U.S.C. §1983),** and did commit various torts against the Plaintiff.

7) Officer Als, (hereinafter referred to as Als), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, **(42 U.S.C. §1983),** and did commit various torts against the Plaintiff.

8) Officer David, (hereinafter referred to as David), at all times relevant to the complaint, and being mentioned herein, did deprive

the Plaintiff of his Constitutional Rights under the color of law, **(42 U.S.C. §1983)**, and did commit various torts against the Plaintiff.

9) Officer Scoma, (hereinafter referred to as Scoma), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Right under the color of law, **(42 U.S.C. §1983)**, and did commit various torts against the Plaintiff.

10) Officer Maldanado, (hereinafter referred to as Maldanado), at all times relevant to the complaint, being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, **(42 U.S.C. §1983)**, and did commit various torts against the Plaintiff.

11) Officer Fontanez, (hereinafter referred to as Fontanez), at all times relevant to the complaint, being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, **(42 U.S.C. §1983)**, and did commit various torts against the Plaintiff.

12) Officer Vega, (hereinafter referred to as Vega), at all times relevant to the complaint, being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, **(42 U.S.C. §1983)**, and did commit various  torts against the Plaintiff.

13) Officer Azad, (hereinafter referred to as Azad), at all times relevant to the complaint, being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, **(42 U.S.C. §1983)**, and did commit various torts against the Plaintiff.

14) Captain Feilds, (hereinafter referred to as Cpt. Feilds), at all times relevant to the complaint, and mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, (42 U.S.C. §1983), and did commit various torts against the Plaintiff.

15) Captain Boyd, (hereinafter referred to as Cpt. Boyd), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, (42 U.S.C. §1983), and did commit various torts against the Plaintiff.

16) Captain Smith, (hereinafter referred to as Cpt. Smith), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, (42 U.S.C. §1983), and did commit various torts against the Plaintiff.

17) Dr. Laali Ali, (hereinafter referred to as Ali), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, (42 U.S.C. §1983), and did commit various torts against the Plaintiff.

18) Dr. Ranjan, (hereinafter referred to as Ranjan), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, (42 U.S.C. §1983), and did commit various torts against the Plaintiff.

-4-

19) Dr. Umeasor, (hereinafter referred to as Umeasor), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, (42 U.S.C. §1983), and did commit various torts against the Plaintiff.

20) Dr. Sheila Cross-Horlback, (hereinafter referred to as Dr. Cross), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under color of law, (42 U.S.C. §1983), and did commit various torts against the Plaintiff.

21) Dr. Francois Jeanty, (hereinafter referred to as Dr. Jeanty), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, (42 U.S.C. §1983), and did commit various torts against the Plaintiff.

22) Dr. Carlos Meletiche, (hereinafter referred to as Dr. Carlos), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, (42 U.S.C. §1983), and did commit various torts against the Plaintiff.

23) Dr. Leelamma Thomas, (hereinafter referred to as Dr. Thomas), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional rights under the color of law, (42 U.S.C. §1983), and did commit various torts against the Plaintiff.

-5-

24) Dr. Arkady Cherchever, (hereinafter referred to as Dr. Arkady), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, (42 U.S.C. §1983), and did commit various torts against the Plaintiff.

25) Dr. Raja Mallavarapu, (hereinafter referred to as Dr. Raja), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, (42 U.S.C. §1983), and did commit various torts against the Plaintiff.

26) Dr Ava Belton, (hereinafter referred to as Dr. Belton), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, (42 U.S.C. §1983), and did commit various torts against the Plaintiff.

27) Dr. Allan S. Goldberg, (hereinafter referred to as Dr. Goldberg), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, (42 U.S.C. §1983), and did commit various torts against the Plaintiff.

28) Akinpelu Ibitoye, (hereinafter referred to as Ibitoye), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, (42 U.S.C. §1983), and did commit various torts against the Plaintiff.

-6-

29) Ms. Moultry, (hereinafter referred to as Moultry), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, **(42 U.S.C. §1983),** and did commit various torts against the Plaintiff.

30) Bellevue Hospital, John Doe employee for Bellevue, (hereinafter referred to as Bellevue), at all times relevant to the complaint, and being mentioned herein, did deprive the Plaintiff of his Constitutional Rights under the color of law, **(42 U.S.C. §1983),** and did commit various torts against the Plaintiff.

### FACTS OF THE COMPLAINT

31) On the 27th day of May, 2012, while incarcerated at George R. Vierno Center, (hereinafter referred to as G.R.V.C.), housed in 17A, #8 cell, in the Rikers Island Facility, located at 09-09 Hazen Street, East Elmhurst, N.Y. 11370, Officer Lee engaged the control panel to open and close the cell doors.

32) As the Plaintiff attempted to exit his cell, Lee purposely closed the door on the Plaintiff's left hand, causing physical injury in the form of a deep gash, which caused severe bleeding and substantial pain to Plaintiff's left hand.

33) Lee, who clearly saw Plaintiff's hand stuck in the door, cursed at the Plaintiff and still did not immediately open the door, but instead waited until the Plaintiff screamed for an additional two minutes, which further exacerbated the injury and pain the Plaintiff had sustained.

34) Once the doors reopened, Plaintiff noticed his left hand profusely
bleeding, with a deep gash across his index and middle fingers.
Plaintiff then ran to the bubble console, and showed the officer
his injured hand, and Lee stated, "thats good for you, shouldn't
have been screaming like a little faggot".

35) Plaintiff then requested to be taken to medical, and Lee said,
that he would call the Captain and told the Plaintiff to lock in,
which he did, but not Captain never showed up to Plaintiff's cell.

36) Approximately two hours later, on the 7-3 tour, Plaintiff com-
plained to the new officer, who then called the area Captain, (Cpt.
Feilds), who saw the injury to the Plaintiff's hand and immediately
escorted the Plaintiff to the medical clinic.

37) During Plaintiff's escort to medical, Plaintiff then explained
to Cpt. Feilds, what Lee did, and Cpt. Feilds expressed her disbelief,
and threatened the Plaintiff to the effect that if the Plaintiff
did not reveal who truly assaulted him, that he would be placed
in punitive segregation.

38) Plaintiff was seen by Dr. Ali, where he explained to her how
Lee intentionally caused the Plaintiff's injuries, and she said
"she didn't believe me", and that she would write it as if it was
an accident, or if the inmates did it.

39) Thereafter, Plaintiff was told to pack his belongings so that
he can be moved to another housing unit. Thereafter, Plaintiff then
filed a Grievance.

-8-

40) On or about the 20th day of August, 2012, while about to be transported from Rikers Island to Bellevue Hospital, Officer Reid told the Plaintiff to "shut the fuck up", while Plaintiff was speaking to another inmate.

41) When it was Plaintiff's turn to be shackled, Reid purposely put the shackles on Plaintiff so that they would restrict the blood flow in the Plaintiff's legs.

42) Plaintiff immediately complained to Reid, who then told the Plaintiff to "sit down, and shut the fuck up", and further states he "hopes my leg fall off".

43) At this time, Plaintiff turned to officer Zender and complained to him and Zender said, "if you don't like it, don't come to jail".

44) Both Reid and Zender, disregarded the Plaintiff's complaints about the shackles, and further made Plaintiff walk to the bus.

45) When Plaintiff arrived at Bellevue, he could barely stand, let alone walk, because his legs were numb because of lack of blood circulation, at this time Reid, and Zender began to drag the Plaintiff into the building.

46) When Zender finally took the ankle shackles off of the Plaintiff's leg, Plaintiff's ankles were swollen, and his skin was broken, looking black and blue.

47) Plaintiff then complained to staff at Bellevue, and also to Dr. Cross when he reached Rikers Island, G.R.V.C..

48) On September #rd, 2012, Plaintiff file a Grievance with Ms. Moultry, within the grievance office in G.R.V.C., Rikers Island. (see exhibit B ).

49) On November 25th, 2016, Plaintiff went to sick call and was seen by Dr. Goldberg. Plaintiff complained and showed Dr. Goldberg his legs, and explained to him as to how he sustained his injuries. Plaintiff then informed him and he expressed his disbelief of Plaintiff's information.

50) Dr. Goldberg then supplied the Plaintiff with insufficient medical treatment, when said Doctor merely gave the Plaintiff supportive footwear, and a cane, while ignoring Plaintiff's open wounds, failed to clean, disenfect, or bandage said wounds. (see exhibit C ).

51) As a direct and proximate result of the above mentioned Doctor's omissions, (see ¶49, 50, supra), Plaintiff's wounds became infected causing the Plaintiff substantial pain, and inability to walk.

52) On December 5th, 2012, Plaintiff woke up in the middle of the night in excruciating pain, and Plaintiff's legs were extremely swollen and the cuts on Plaintiff's ankles were infected.

53) Plaintiff requested emergency sick call but was denied and told the Plaintiff to wait an additional twenty four hours until the next shift, at this time Plaintiff's pain became unbearable.

54) On December 6th, 2012, Plaintiff went to sick call once again and complained about his swelling and open wounds, and was seen by P.A. Jeanty. (see exhibit D ).

-10-

55) P.A. Jeanty, neglected to do his duty as a P.A. by not treating Plaintiff's wounds which were clearly infected. (see exhibit_E_).

56) On or about December 17th, 2012, Plaintiff went to the Grievance office to check on the status of his previous Grievance, and to file an additional Grievance further complaining about the denial of medical care for the injuries Plaintiff sustained. (see exhibit ___).

57) The person whom Plaintiff requested the information from and filed the first and additional Grievance with, was Ms. Moultry.

58) Upon my request for information, Ms. Moultry became erratic, abusive and stated that "all I'm doing is lying on her colleagues", and threatened the Plaintiff to the effect that, if I continue to pursue these Grievances, that she would "write me a ticket, and have me thrown in the box".

59) Plaintiff out of fear was deterred from filing any Grievances, or following up with any of the appeals of the previous grievances due to Ms. Moultry's threats of retribution, and any grievances that Plaintiff filed thereafter was not pursued with vigor.

60) On February 19th, 2013, Plaintiff went to sick call complaining of pain, denture repair, not being able to walk, and open wounds to Dr. Cross.

61) Dr. Cross then prescribed Plaintiff Augmentin, and Hydro-Cortisone ointment for Plaintiff's open wounds, which made Plaintiff's wounds become worse. (see exhibit G ).

62) On February 25th, 2013, Plaintiff returned to sick call again complaining of the medication he was given to Dr. Ranjan, who noted Plaintiff's wounds but did not change the medication or prescribe anything for Plaintiff's open wounds.

63) At this time Plaintiff asked to speak to the head Doctor, Dr. Arkady. Dr. Arkady ignored and disregarded Plaintiff's infections but instead scheduled Plaintiff for a lab test concerning Plaintiff's medical history.

64) On March 3rd, 2013, Plaintiff was seen at Bellue Hospital by Dr. Belton, who ignored Plaintiff's complaints and did not recommend any medication for Plaintiff's clearly infected and open wounds which remained unhealed. (see exhibit H ).

65) On March 18th, 2013, Plaintiff went to emergency sick call and complained to Dr. Raja, that he was in excruciating pain, and requested to go to the hospital.

66) Dr. Raja denied Plaintiff's request to go to the hospital. (see exhibit I ).

67) On March 20th, 2013, Plaintiff went to sick call and was seen by Dr. Ranjan, who after examining Plaintiff's injuries further gave Plaintiff a renewal for Augmentin anti-biotics, but still

-12-

reused to change Hydro- Cortison cream, Plaintiff wounds turned
into ulcers. (see exhibit___)

68) On or about May 2nd, 2013, Plaintiff was seen by Dr. Ranjan,
after returning from the outside clinic, and said Doctor scheduled
the Plaintiff to be seen by vascular specialist.

69) Plaintiff was seen by the specialist on or about August 1, 2013,
whereas he was scheduled for surgery.

70) On January 9th, 2014, Petitioner was admitted to the prison
unit in Bellevue Hospital, to prepare for his surgery. However,
the Dr. told the Plaintiff that the procedure was being aborted
because of the duration of time that passed between the initial
time he was scheduled, to the time he was seen for his surgery,
and that the vein was located to close to the skin.

71) As a result of Bellevue Hospital's and John Doe's administrator's
gross and negligent delay, Plaintiff's medical condition deteriorated
and became irreparable.

_____

72) On July 22nd, 2013, while incarcerated at G.R.V.C., housed at
17B, #10 cell, a riot occurred between officer's and inmates, which
Plaintiff was not involved in, nor were a participant in.

73) During this incident, Officer Als struck the Plaintiff in the
ear, and the back of the head, with a chair, while attempting to
throw it.

74) At this time, Plaintiff immediately fell unconscious, Plaintiff was then revived by Als, and Officer David, who were smacking the Plaintiff in the face, and then taking the Plaintiff to the intake area.

75) Whereupon Plaintiff's arrival at intake, Plaintiff continued complaining of injuries to his head, severe headaches, dizziness, double vision, and loss of hearing, and requested to be taken to medical.

76) David refused to take an injured, and shocked Plaintiff to medical, and Plaintiff eventually passed out. Plaintiff woke up in route to medial, being halfway dragged by said Officers.

77) Upon arrival, Plaintiff was seen by Dr. Umeasor. Plaintiff explained to Umeasor what he remembered happening to him and the Dr. claimed that "he doesn't believe that the officers would do that", and he documented the incident as if inmates injured the Plaintiff. See (exhibit K ).

---

78) On January 1st, 2014, Plaintiff was escorted to the intake area of G.R.V.C., from his housing unit, by an unidentified Captain.

79) Upon arriving at intake, the Cpt. turned Plaintiff over to Officer Vega, Fontanez, and Scoma.

80) Plaintiff who did not know the reason for being brought to intake requested information from Vega, as to why he was there.

81) Fontanez responded to Plaintiff by telling the Plaintiff "to shut the fuck up".                    -14-

82) After repeated requests for information, Fontanez finally told the Plaintiff that he was being re-arrested.

83) Upon receiving this information, Plaintiff informed Fontanez that he had an attorney, and that he wished to contact his attorney by phone.

84) Plaintiff persisted in making his requests to speak with his attorney, all of which were denied by the officers.

85) Thereafter, Plaintiff observed another inmate occupying the holding pens across from Plaintiff. This inmate was also making the same request, to speak with his attorney.

86) Thereafter, Plaintiff observed Vega open the pen door, where the above inmate was located, and all three above named defendant officers entered that holding pen, slammed that inmate against the wall, and began to beat on that inmate with closed fists to his face, and body area.

87) After observing this, Plaintiff heard officer Vega state that "his ass was next", referring to Plaintiff, causing Plaintiff to feel fearful for his safety, and to become extremely emotionally distraught.

88) Short;y thereafter, Scoma came towards the pen that Plaintiff occupied, and Plaintiff insisted to call his attorney immediately, and Scoma said, "if you say that one more time, we're gonna whip your ass".

89) Plaintiff re-iterated his request to speak with his attorney, or an area Cpt., and this request caused the defendants to place their gloves on.                                    -15-

90) Scoma instructed the intake officer to open Plaintiff's pen. As soon as the pen opened, Plaintiff, being fearful of his safety, rushed out of the pen. Plaintiff also rushed out of the pen, trying to avoid being beat down in the manner that he just witnessed, and in an attempt to have any force used caught on the camera; outside of the holding pen.

91) The defendants then maced the Plaintiff in the face, making it difficult for the Plaintiff to see or breathe.

92) The defendants then rushed the Plaintiff and slammed him up against the holding pen, and cuffed Plaintiff.

93) The defendants then attempted to take the Plaintiff out of the building, to place him on an awaiting vehicle, which would have transported Plaintiff to the re-arrest location, however before they were able to do so, they were stopped by Cpt. Boyd.

94) Cpt. Boyd explicitly asked the defendants what did they think they were doing to the Plaintiff, and, that before the defendants can take the Plaintiff anywhere, he must be debreathed, which is a process that removes mace from the eyes, and lungs.

95) The defendants then moved Plaintiff to the area behind intake, where a shower is located.

96) Upon reaching this area, defendants immediately attacked Plaintiff by repeatedly punching, kicking, and stomping, even though the Plaintiff was compliant, passive, and subdued.

97) Plaintiff yelled, "please dont hit me againg, I just wanted

·to let my lawyer know what's going on".

98) At this time, Cpt. Boyd came into the area where Plaintiff was, and instructed the defendant officers to leave the area immediately.

99) After Plaintiff thoroughly washed his face, Plaintiff complained of having trouble breathing, and was taken to medical.

100) Plaintiff was seen by Dr. Ibitoye, and explained to him what took place, and was given a treatment for his asthma. (see exhibit_L_).

101) Plaintiff was then seen by Dr. Thomas, and while seeing Dr. Thomas, Vega, Fontanez, and Scoma, demanded that Dr. Thomas produce the records that she was preparing, which documented the Plaintiff's injuries. (see exhibit_M_)

102) After viewing the medical records, the officers abruptly inter-fered with and brought to an end, Plaintiff's treatment, with the doctor, by ordering Plaintiff out of the room, and ordering Plain-tiff to put his hands on the wall in the clinic area, and which the Plaintiff complied.

103) Plaintiff was then handcuffed, and once the Plaintiff was rear cuffed, Fontanez, and Scoma, then began to use gratuitous excessive force, upon the already subdued cooperating Plaintiff, to wit: by punching Plaintiff in his stomach and rib cage area, causing Plaintiff to double over and fall to the ground, then by grabbing the chain of the cuffs affixed to Plaintiff's wrist and lifting the Plaintiff into standing position, by pulling on said

-17-

cuffs were locked behind the Plaintiff's back, and once the Plaintiff was in standing position, the officers continued to lift the Plaintiff's arms in this manner while he was being made to walk, until Plaintiff's arms were above his head, and the Plaintiff was bent over and barely standing on his toes.

104) Thereafter, a loud "popping sound came from the Plaintiff's shoulder sockets, which as a direct and proximate result, caused the Plaintiff substantial pain, and injuries.

105) Plaintiff was then taken by said officers and re-arrested.

_____

106) On May 6th, 2014, Plaintiff was placed in the back of a window-less van , to be transported from Manhattan Detention Center to West Facility, to the specialty    clinic on Rikers Island, by Azad, Maldanado, and Cpt. Smith.

107) The Plaintiff was seated in the back compartment of this van which is a windowless and tight, and has a ventilation system that is controlled by officers.

108) Plaintiff immediately asked for Azad, or Maldonado to turn the air circulation on.

109) Both officers told the Plaintiff to "hold the fuck up". Once the van started moving, Plaintiff who waited, again asked said officers to either turn on the ventilation or to give Plaintiff his asthma pump, that the officers had taken from him prior to being transported.

110) At this time, Cpt. Smith told the Plaintiff to "shut the fuck up, and wait".

111) Plaintiff, while waiting, began to experience shortness of breath, chest pains, dizziness, which increased to, Plaintiff not being able to breathe.

112) Thereafter, Plaintiff told the officers that he could not breathe, and immediately requested that they bring his asthma pump, and turn on the circulation.

113) Maldanado then told the Plaintiff to "stop bitching, it's not that hot"

114) Plaintiff eventually passed out in the van, and the next thing he recalls, is being smacked in the face by officers, telling him to wake up.

115) Plaintiff was then told to step out of the van, and once Plaintiff stood up, Plaintiff became dizzy, and could not move any further.

116) While being escorted into the building, Plaintiff asked for his asthma pump, and Maldanado told the Plaintiff to "shut the fuck up", and wait until we get inside.

117) Once Plaintiff stepped inside the building, he asked for his asthma pump again, letting the officer know that this was an emergency, and both officers blatantly ignored Plaintiff.

119) Plaintiff then became extremely weak, and fell to the floor, and passed out.

-19-

119) The next thing Plaintiff recalls, is being rejuvenated by Dr. Meletiche, smacking the Plaintiff in the face, telling him to "stop faking, and wake up".

120) Dr. Meletiche, then forced Plaintiff, who was shackled, with limited mobility, who sustained injuries from his fall, to get up and walk to the stretcher.

121) Meletiche was deliberately indifferent to Petitioner's medical condition at the time.

122) Plaintiff was then taking to the infirmary, and Plaintiff then asked the nurse what happened to him, and where he was at, which a nurse informed Plaintiff that he "passed out", and that the Doctor was calling an ambulance to take him to the hospital. (see exhibit_N_).

123) The ambulance came and took Plaintiff to Elmhust Hospital. (see exhibit_O_).

124) On May 15, 2014, Plaintiff then filed a Grievance in Manhattan Detention Center. On May 22nd, 2014, Plaintiff was transferred to Downstate Correctional Facility. Plaintiff never received any response from M.D.C. about this Grievance.

### VIOLATION'S OF PLAINTIFF'S CONSTITUTIONAL RIGHTS AND INJURIES PLAINTIFF SUFFERED

125) Plaintiff hereby incorporates by reference all of the allegations contained in paragraph #1-124, herein.

126) All of the defendants herein, violated; conspired to violate; and, failed to intercede to prevent the violations of Plaintiff's

127) The defendants violated the clearly established Constitutional rights of the Plaintiff, which they should have known.

128) As a direct and proximate result of defendant Lee's negligence, the Plaintiff suffered physical injuries in the form of substantial pain; substantial swelling, and severe bruising to th Plaintiff's left hand, permanent disfigurement, temporary loss of the operation, and use of his fingers, and inability to write.

129) The aforementioned swelling and bruising to the area described above, (see ¶ #128), lasted for well over a month after the incident complained of herein.

130) As a direct and proximate result of defendant lee's negligence, the Plaintiff suffered physical injuries in the form of substantial pain; substantial swelling, and severe bruising to the Plaintiff's left hand, permanent disfigurment, temporary loss of the operation, and use of his fingers, and inability to write, and Dr. Ali conspired with the above named defendant by failing to document how Plaintiff sustained his injuries, and failing to schedule the Plaintiff for physical therapy for his left hand.

131) As a direct and proximate result of defendant Lee's violations enumerated herein, Plaintiff has suffered extreme emotional distress; mental anguish; inability to sleep properly; reoccurring nightmares of the incident; irrational phobia of walking through doors; post-traumatic stress disorder; anxiety;and depression.

**Affidavit of Service**

State of New York)
County of Seneca)ss.:

I, Samuel Walton , being duly sworn, deposes and says:

1. That on 7 / 2 / 16 , I did in fact place the designated copies of the following papers in the Mailbox at Five Points Correctional Facility:

    a. Amended Complaint

    b. 3rd copy

    c. _____

2. Said papers were adressed to the following parties:

**Orginal and Duplicate(s)**

Hon. Paul A. Gardephe / Clerk of the court
40 Foley Square
New York, N.Y. 10007

**Copy**

Alexander Noble
100 Church Avenue
New York, N.Y. 10007

**Copy**

Robert Reilly
630 Third Avenue 5th fl.
N.Y., N.Y. 10017

Very truly yours,

Samuel Walton

Five Points C.F.
PO Box 119
Romulus, New York 14541

Sworn to before me this
2 day of July , 2016
_____
NOTARY PUBLIC

NICOLE A. RELYEA
Notary Public - State of New York
No. 01RE6334955
Qualified in Seneca County
My Commission Expires December 28, 2019

FIVE POINTS CORRECTIONAL FACILI
STATE ROUTE 96, P.O. BOX 119
ROMULUS, NEW YORK 14541
NAME: Mr. Samuel Walton

Five Points

Correctional Facility

neopost
07/06/2016
US POSTAGE $000.84
ZIP 14541
041M11272007

USA FOREVER
USA FOREVER

SDNY

Legal Mail

Clerk of the Court
Hon. Paul G. Gardephe
40 Foley square
New York N.Y. 10007